**Thomas E. JUDD, Plaintiff,**

v.

**Ralph E. HEITMAN and Mary E. Heitman, Defendants.**

**Civ. A. No. 74–246.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Oct. 14, 1975.

Fred E. Cowden, Jr., Nashville, Tenn., for plaintiff.

H. Stanley Allen, Jr., Nashville, Tenn., for defendants.

DANIEL HOLCOMBE THOMAS, District Judge.

The above-styled cause was heard by the Court without a jury and taken under submission on the 15th day of September 1975. Having considered the testimony, exhibits, stipulations and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. This action was brought by the plaintiff, Thomas E. Judd, a citizen of

Salt Lake City, Utah, for the balance due and owing the plaintiff under the terms of an installment sale and security agreement entered into with the defendants, Ralph E. Heitman and Mary E. Heitman, citizens of Westmoreland, Sumner County, Tennessee, on July 11, 1972, for the purchase of a 1971 Diamond Rio five ton tractor truck, identification # DRE648C591348. The plaintiff also seeks to recover costs and attorneys' fees under the July 11, 1972 agreement. Moreover, the plaintiff seeks to recover the balance due and owing plaintiff from the defendants under the terms of an alleged oral agreement made in October 1971, for the purchase of a 1962 Strict Semi-Trailer, serial # 44391.

2. The defendant, Ralph E. Heitman, asserts in defense that the amounts claimed by the plaintiff are excessive and, accordingly, files a cross-claim seeking payment for wages due him on an alleged oral agreement made between the parties for the period of September 1971 to July 11, 1972. In sum, all of the parties seek a determination by the Court as to the amount of costs that each is entitled.

3. The plaintiff, in his amended complaint, asserts that Mary E. Heitman, wife of the defendant Ralph E. Heitman, conspired with her husband to defraud the plaintiff by concealing from him the tractor truck and trailer described above. Furthermore, plaintiff alleges that Mary E. Heitman fraudulently titled the tractor truck in her name in the State of Alabama knowing that the plaintiff was the owner of the truck. Therefore, the plaintiff avers that he is entitled to a judgment against both defendants for the amount due and owing him for the purchase of the truck, costs and expenses incurred in locating the truck and for reasonable attorneys' fees.

4. By contract dated July 11, 1972, the plaintiff and defendant, Ralph E. Heitman, entered into an installment sale and security agreement covering the tractor truck with the purchase price of the truck being $16,267.47. The payment terms of the agreement provided that:

> "Buyer agrees to pay at the place designated by Seller or Seller's assignee the Contract Balance in ....... equal successive monthly installments of $500.00 or more each, commencing August 1, 1972, and continuing on the same day of each month thereafter until paid in full or as follows. . . ."

5. In addition to other provisions contained in this agreement, the contract read as follows:

> "Title shall be held in escrow by Nielsen, Conder, Hansen and Henriod and shall be delivered to Buyer upon satisfactory proof of compliance with this agreement. In case of default, title shall be delivered to Seller."

A stipulation was entered by all parties that the defendant-buyer made payments in the amount of $3,473.30. However, the defendant made no further payments as of June 14, 1973, even though he continued to operate the tractor truck after discontinuing his payments. At the time that the defendant defaulted, there remained an outstanding balance under the agreement in the sum of $12,794.17. Moreover, as a result of this default, certain other costs were incurred by the plaintiff, namely, costs to locate the tractor truck, insurance payments to insure the vehicle against loss, damage and theft and legal expenses.

6. The plaintiff instituted legal action against the defendant and on July 1, 1974, obtained a Writ of Possession by order of this Court demanding the United States Marshal to take possession of the tractor truck and trailer and deliver this property to the plaintiff.[1]

---

1. The Court, on June 17, 1974, issued an order to show cause along with a temporary restraining order to determine why the property described above should not be

Subsequently, the tractor truck was recovered and delivered to the plaintiff on July 16, 1974, and in October 1974, the trailer was located and delivered to the plaintiff. The tractor truck was later sold on November 25, 1974, and the plaintiff received the sum of $8,000.00. The parties having stipulated that the tractor truck was sold for $8,000.00 and the amount still outstanding and which the plaintiff now claims is the sum of $4,794.17. Although the parties are in accord as to the remaining balance under the agreement, the parties are in disagreement on the following costs and expenses.

■ 7. Under the terms of the installment agreement, the defendant-buyer was required to insure the tractor truck. The pertinent section states:

"INSURANCE—Buyer agrees, at his expense, to insure the Collateral against loss, damage, theft (and such other risks as Seller may require) to the full insurable value thereof with insurance companies and under policies and in form satisfactory to the Seller. Proceeds from the insurance shall be payable to Seller as its interest may appear and all policies shall provide for 10 days minimum written cancellation notice to Seller. Upon request, policies or certificates attesting the coverage shall be deposited with the Seller. Insurance proceeds may be applied by Seller toward payment of any of the obligations, whether or not due, in such order of application as Seller may determine."

The plaintiff has testified that he made the following insurance payments on the tractor truck to which he is entitled to recover from the defendant:

| | | |
|---|---|---|
| 7/28/72 | | $ 387.40 |
| 8/1/72 | | 717.60 |
| 10/4/72 | | 221.03 |
| 5/16/73 | | 240.00 |
| 8/13/73 | * | 1,500.00 |
| | | $3,066.03 |
| | | − 1,108.00 |
| Total | | $1,958.03 |

Defendant admits that he has not insured the tractor truck. The Court finds that the plaintiff having shown proof of payment is entitled to recover the above amount from the defendant.

■ 8. Under the provisions of this agreement, the plaintiff-seller has certain remedies in the event of a default by the buyer. The pertinent section reads:

"REMEDIES—Upon the occurrence of any default hereunder and at all times thereafter, all of the Obligations shall, at the election of Seller and without notice of such election, become immediately due and payable and Seller shall have the remedies of a secured party under the Utah Uniform Commercial Code or other applicable law and: (1) Seller shall have the right to enter upon any premises where the Collateral may be and take possession thereof; Buyer shall, if requested by Seller, assemble the Collateral at a place designated by Seller; Seller may sell, lease or otherwise dispose of any or all of the Collateral and, after deducting the expenses incurred by Seller, including reasonable attorneys' fees and legal expenses, apply the residue to pay (or to hold as a reserve against) the Obligations; . . ."

Plaintiff asserts that in attempting to recover the tractor truck from the de-

turned over by the defendant to the plaintiff. The defendant failed to appear at the hearing and an injunction was issued restraining Ralph E. Heitman and his wife, Mary E. Heitman, from damaging, concealing or removing the truck and trailer from the jurisdiction of this Court.

* Plaintiff produced a policy, the original premium being $1500.00 of which the sum of $1,-108.00 was returned to the plaintiff upon cancellation of the policy, leaving a net cost of insurance paid by the plaintiff of $392.00.

fendant he incurred an expense of $1,150.00. The amount in question was paid to a Virginia Drennan, a private detective, who was employed by the plaintiff on September 20, 1973, to locate the tractor truck and trailer. The detective testified that she was able to locate the truck on either October 8 or October 9, 1973. Her employment records reveal that at the time she located the vehicle the charge to the plaintiff for her services was $150.00. However, the detective was not discharged when the tractor truck was located but continued working for the plaintiff for which she received an additional $1,000.00 for surveillance of the vehicle.[2] Plaintiff contends that this entire amount was justified in that the defendant attempted to conceal the tractor truck from him and thereby was violating a provision of the installment agreement.[3] The defendant admits that the plaintiff is entitled to the sum of $150.00 which was paid to the detective in locating the vehicle, however, defendant asserts that the additional $1,000.00 is an unreasonable expense which should be incurred by the plaintiff. Defendant further asserts that he at no time attempted to conceal the tractor truck from the plaintiff.[4] The Court finds that the plaintiff has introduced no evidence that the defendant concealed or attempted to conceal the tractor truck from the plaintiff. The Court further finds that the $1,000.00 paid to the detective after the vehicle was in fact located is an excessive and unreasonable expense. Therefore, the defendant is required to pay the sum of $150.00 to the plaintiff.

■ 9. The plaintiff asserts that under the terms of an oral agreement entered into in October 1971, between the parties, the plaintiff purchased a 1962 Strict Semi-trailer and delivered the same to the defendant with the understanding that the defendant was to repay the plaintiff for the purchase price of the trailer out of the proceeds realized from the operation of the truck and trailer. Plaintiff further asserts that the defendant defaulted under the terms of the agreement in that the defendant made no additional payments to the plaintiff after June 14, 1973, for the purchase of the tractor truck even though he continued to operate the tractor truck and trailer after this date. Plaintiff avers that he is entitled to the remaining balance of $1,361.35. Both the plaintiff and defendant testified that there was no written agreement between the parties concerning the purchase of the trailer. The Court finds that the plaintiff has introduced no evidence that an agreement of any kind was entered into by the parties.[5] Accordingly, the Court finds that the plaintiff is not entitled to the remaining balance from the defendant.

■ 10. In a cross-action filed by Heitman against the plaintiff-defendant Judd, Heitman asserts that he is entitled to be compensated for the reasonable value of his services as an employee of Judd for services rendered for the peri-

---

2. The detective testified on cross examination that she received the additional $1,000.-00 to "keep up with the truck and report her findings to the plaintiff."

3. The applicable provision asserted by the plaintiff contains the following language:
   CARE OF PROPERTY—Buyer shall keep the Collateral in good repair and be responsible for any loss or damage to it; keep it free from all liens, encumbrances and security interests; pay when due all taxes, license fees and other charges upon it; not sell, misuse, *conceal* or in any way dispose of it or permit it to be used unlawfully or for hire or contrary to the provisions of any in-

surance coverage; not permit it to become a fixture or an accession to other goods except as specifically authorized in writing by Seller. Loss of or damage to the Collateral shall not release Buyer from any of the Obligations.

4. Plaintiff testified that the defendant repainted the tractor truck from brown to green in an attempt to conceal the truck's identity from the plaintiff, however, the defendant admitted he painted the vehicle due to the fact that it needed painting.

5. The parties are in agreement that the fair market value of the trailer at the time of trial is approximately $300.00.

od September 1971, to July 11, 1972. According to Heitman, the agreed amount that he would receive was ten cents per mile. The agreed mileage on the tractor truck as of July 11, 1972, was 110,000 miles. Therefore, wages on that basis would amount to the sum of $11,000.00.[6] As a defense to the claim raised by Heitman, the cross-defendant asserts that prior to the execution of the installment sale and security agreement of July 11, 1972, the parties were operating under a verbal agreement whereby the plaintiff would purchase the tractor truck for the defendant with the understanding that the defendant would operate the truck and that all sums earned by the defendant were to be applied to the purchase of the vehicle and for the defendant's personal expenses in operating the truck. Upon completion of repayment to the plaintiff the tractor truck was to become the sole property of the defendant. According to the plaintiff, the parties at no time made an agreement that the defendant would be compensated by the plaintiff in the sum of ten cents per mile for the miles driven by the defendant.[7] Based upon the evidence as presented at trial, the Court finds that there was no agreement between the parties as to the amount of wages that defendant was to receive from the plaintiff. Accordingly, the Court finds that the plaintiff is not liable to the defendant for the amount of wages claimed.

## CONCLUSIONS OF LAW

On the basis of the foregoing facts, the Court makes the following conclusions of law:

1. The Court has jurisdiction over all the parties and subject matter of this litigation under 28 U.S.C. § 1332.

2. The defendant herein asserts that he entered into an oral agreement with the plaintiff to be compensated for services rendered to the plaintiff. The defendant bases his right to receive payment on a verbal agreement made between the parties; however, the plaintiff contends that no such agreement was entered into by the parties.

3. Without a lengthy discussion of the precedents, suffice it to state that it is well established that to have a contract implied in fact, there must have been a mutual agreement between the parties; that is, there must be either circumstances or conduct from which it can be inferred that the parties had a meeting of the minds. *Baltimore & Ohio R. R. Co. v. United States*, 261 U.S. 592, 598, 43 S.Ct. 425, 67 L.Ed. 816 (1923). Professor Corbin has said that an implied contract includes those contracts actually intended and tacitly understood. 3 Corbin on Contracts, § 563, 1960 Ed. Accordingly, the Court is of the opinion that the defendant has failed to establish that an employment contract existed between the parties. Furthermore, the Court finds that an implied contract cannot be inferred from the acts of the parties and the other circumstances of this action.[8]

4. The plaintiff herein asserts that he entered into an oral agreement with the defendant for the purchase of a 1962 Strict Semi-trailer. For the reasons stated above the Court finds that there was no implied contract between the parties.

6. Defendant testified that the plaintiff-defendant is entitled to a $1,500.00 credit for payments received by Heitman from various shippers thereby reducing the claim for wages to the amount of $9,500.00.

7. Plaintiff testified that the written agreement entered into by the parties on July 11, 1972, was on the request of the defendant. Moreover, the written agreement was drawn to conform with the oral agreement which existed prior to July 11, 1972.

8. Courts have imposed quasi-contractual obligations even though there was neither expectation of compensation nor mistaken reliance upon a supposed contractual obligation. See *Nash v. Alaska Airlines, Inc.*, 94 F. Supp. 428 (S.D.N.Y.1950). However, quasi contractual obligations rest upon broad equitable considerations and the Court finds that it would not be just to require payments by the plaintiff to the defendant.

5. The plaintiff herein asserts that the defendant defaulted under the terms of an installment sale and security agreement. Under the provisions of Article 9 of the Uniform Commercial Code as adopted in Utah, the plaintiff-seller shall have the remedies of a secured party upon the occurrence of a default by the buyer.

6. The plaintiff-seller is therefore entitled to an entry of judgment against the defendant-buyer. The Court finds that the plaintiff is entitled to $4,794.17, the balance due on the installment agreement. As to the costs and legal expenses incurred by the plaintiff, the Court finds that the plaintiff is entitled to $150.00 for detective expenses, $1,958.03 for insurance premiums and for attorneys' fees in the amount of 33⅓%.

7. The Court finds that the claims made by the plaintiff against the defendant, Mary E. Heitman, are not well taken and therefore, the Court directs a verdict in the favor of Mary E. Heitman, thereby dismissing her from this litigation.

A decree will be entered in accordance herewith.